UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REHABCARE GROUP EAST, INC. D/B/A REHABCARE GROUP THERAPY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CERTIFIED HEALTH MANAGEMENT, INC., *et al.*, <br><br> Defendants. | No. 07 C 2923 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff RehabCare Group East, Inc. ("Plaintiff" or "RehabCare") brings this six-count complaint against Certified Health Management, Inc. ("Defendant" or "CHM"), an entity that manages skilled nursing homes. While the motion to dismiss before me now only involves CHM, Plaintiff also brings its complaint against seven facilities that CHM manages ("Facilities"). At bottom, this is a contract dispute. The nub of Plaintiff's complaint is its allegation that Defendant and the Facilities failed to pay RehabCare for the therapy services RehabCare provided. For the reasons stated below, CHM's motion is granted in part and denied in part.

### II. DISCUSSION

*A.  Motion to Dismiss Standard*

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I must accept all

well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). I may grant the motion only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). That said, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). As the Seventh Circuit noted, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief." *EEOC v. Concentra Health Services, Inc.*, --- F.3d ---, 496 F.3d 773, 777 (7th Cir. 2007) (emphasis in original). While the Supreme Court's recent decision in *Bell Atlantic* may not have changed the federal pleading standard to a fact-pleading regime, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, --- F.3d ----, No. 06-2949, 2007 WL 2406859, at *4 (7th Cir. 2007).

   B. *Counts I, IV, and V – Breach of Contract, Account Stated, and Attorneys' Fees*

  In Count I, RehabCare alleges a breach of contract claim, Count IV alleges an "account stated" claim, and Count V seeks attorneys' fees. CHM's motion to dismiss these claims is premised on the simple fact that it is not a party to any contract with Plaintiff. RehabCare concedes this, but argues that its claims against CHM are valid under the "alter ego" theory. That is, it seeks to argue that CHM is so intertwined with the Facilities that CHM should be held

responsible for the Facilities' obligations. RehabCare seeks to do this despite the "well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors, and officers, and generally, from other corporations with which it may be affiliated." *Innkeepers' Telemanagement & Equip. Corp. v. Hummert Management Group, Inc.*, 841 F.Supp. 241, 245 (N.D.Ill. 1993) (citation omitted).

In order to employ the "alter ego" theory, RehabCare must "pierce the corporate veil." Under Illinois law,[1] courts will pierce the corporate veil where: (1) "the corporation was so controlled and manipulated that it had become a mere instrumentality of another" and (2) "recognition of a separate corporate identity would sanction a fraud or promote injustice." *Chicago Florsheim Shoe S. v. Cluett, Peabody & Co.*, 826 F.2d 725, 728 (7th Cir. 1987). Parties seeking to pierce the corporate veil face a daunting hurdle. *See Pederson v. Paragon Pool Enterprises*, 574 N.E.2d 165, 167 (Ill. Ap. Ct. 1991) ("Piercing [the] corporate veil is a task which courts should undertake reluctantly."); *see also Hornsby v. Hornsby's Stores, Inc.*, 734 F.Supp. 302, 307-08 (N.D.Ill. 1990) (explaining that exceptions to the rule providing that corporations have separate identities are "not favored and are stringently applied"). The task is even more difficult in a breach of contract case. *See Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981) (holding that in a breach of contract case, "additional compelling facts," such as a finding of fraud, may also be required in order to pierce the corporate veil). Nevertheless, the question here is not whether Plaintiff can necessarily pierce the corporate veil, but whether its claim can survive a motion to dismiss, a much lower threshold. *Cf., Ermoian v. LaSalle Capital L.L.C.*, No. 07 C 1314, 2007 WL 1752206, at *1 (N.D. Ill. June 15, 2007) (declining to grant

---

[1] Both parties agree that Illinois law applies here.

individual defendants' motion to dismiss "with the understanding that their present retention in the case is limited to the potential of their liability on corporate-veil-piercing or alter-ego grounds").

Despite the lower threshold in this procedural posture, Plaintiff nevertheless fails to sufficiently plead its breach of contract or account stated claims under the alter ego theory. As noted, Plaintiff must establish two facts in order to pierce the corporate veil. Plaintiff fails adequately to plead either one. For the first requirement, Plaintiff must plead that the Facilities were so controlled and manipulated that they had become mere instrumentalities of CHM. Plaintiff's attempt to do so comes in the form of its allegation that "upon information and belief, Defendants operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and legal entities." This is insufficient, even under the liberal pleading requirements of FED.R.CIV.P. 8.

Numerous courts have granted motions to dismiss because the party seeking to pierce the corporate veil failed to adequately plead the alter ego doctrine. In *Classic Fire & Marine Ins. Co. v. Illinois Ins. Exchange.*, No. 97 C 1256, 1997 WL 767290 (N.D. Ill. Dec. 3, 1997), the plaintiff asserted that two entities were "affiliate members of the same corporate group, and are subject to common control and ownership." The court deemed the plaintiff's "conclusory" pleading to be insufficient vis-a-vis the first requirement. *Id.* at *5; *see also Hornsby*, 734 F.Supp. at 307-08 (mere allegation that corporations shared office space, office staff and directors is insufficient to suggest fraud or injustice or that one corporation was the alter ego of another); *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 351 (N.D.Ill. 1984).

The court in *Trustees of Cement Masons Fund, Local 502 v. F & V Cement Contractors*, No. 02 C 3979, 2004 WL 765368, at *3 (N.D. Ill. April 7, 2004), also determined that a plaintiff failed to sufficiently plead the alter ego doctrine. There, the plaintiff pled that one entity "controlled the actions of [another entity] and was at all times aware of the wrongful conduct of the company." *F & V Cement Contractors*, 2004 WL 765368, at *3. The court held that averment to be "the kind of barebones, conclusory allegation that has been found insufficient to state an alter ego claim even under the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)." *Id.*; *see also Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F.Supp. 103, 105 (E.D.N.Y.1993) (holding that conclusory allegations regarding the exercise of dominion and control are insufficient when attempting to plead the alter ego doctrine).

Like in *Classic Fire & Marine Ins. Co.* and *F & V Cement Contractors*, Plaintiff's attempt to satisfy the first requirement of the alter ego doctrine is insufficient to withstand a motion to dismiss. RehabCare's allegation—that "upon information and belief, Defendants operate without respect for corporate formalities and in a manner that is inconsistent with their being separate and legal entities—is precisely the type of formulaic, skeletal conclusion that were found lacking in *Classic Fire & Marine Ins. Co.* and *F & V Cement Contractors*. Furthermore, even if I were to deem this sufficient for the first requirement, Plaintiff's complaint does not even allege that the second requirement has been satisfied.

As against CHM, Counts I, IV, and V of Plaintiff's complaint are premised upon the alter ego doctrine. Because Plaintiff fails to satisfactorily plead that theory here, Defendant's motion to dismiss Counts I, IV and V (as against CHM) is granted.

C.     Count II – Promissory Estoppel

In Count II, Plaintiff asserts a claim for promissory estoppel. "To plead a cause of action for promissory estoppel, plaintiff must allege that (1) defendants made an unambiguous promise to plaintiff; (2) plaintiff relied on this promise; (3) plaintiff's reliance was expected and foreseeable by defendants; and (4) plaintiff relied to his detriment." *Robinson v. BDO Seidman, LLP*, 854 N.E.2d 767, 773 (Ill. App. Ct. 2006) (*quoting Jago v. Miller Fluid Power Corp.*, 615 N.E.2d 80 (Ill. App. Ct. 1993)).

Defendant's first line of attack on this Count argues that promissory estoppel is no longer recognized as an offensive cause of action in Illinois. To be sure, some intermediate courts of appeal in Illinois have held that promissory estoppel can no longer be pled as a cause of action, but rather only as an affirmative defense. *See, e.g., Dewitt v. Fleming*, 828 N.E.2d 756 (Ill. App. Ct. 2005); *ESM Dev. Corp. v. Dawson*, 795 N.E.2d 397, 403 (Ill. App. Ct. 2003). However, the Illinois Supreme Court's most recent statement on promissory estoppel was not definitive on this question. *See Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990 (Ill. 1990). Moreover, there is disagreement amongst the Illinois courts as to whether *Dewitt* and *ESM* reflect the position of the Illinois Supreme Court. *See, e.g., Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 826 N.E.2d 970, 975 (Ill. App. Ct. 2005) (citing *Quake* and holding that plaintiff stated an affirmative claim for promissory estoppel). Several courts sitting in diversity in this district have declined to adopt the "novel" theory that promissory estoppel can no longer be pled as an offensive cause of action in Illinois. *See Kamboj v. Eli Lilly & Co.*, No. 05 C 4023, 2007 WL 178434, at *10 (N.D. Ill. January 18, 2007); *TNT Logistics North America, Inc. v. Bailly Ridge TNT, LLC*, No. 05 C 7219, 2006 WL 2726224, at *10 (N.D. Ill. September 21, 2006); *LM

*Insurance Corp. v. Sourceone Group, Inc.*, 454 F.Supp.2d 727, 741 (N.D. Ill. 2006) ("*Quake . . .* still stands as the governing law in Illinois concerning promissory estoppel."). I agree with the other judges on this Court; while exercising diversity jurisdiction, I am unwilling to adopt the position of the *Dewitt* and *ESM* courts absent a more definite statement from the Supreme Court of Illinois.

Plaintiff sufficiently pleads the elements of a promissory estoppel claim. RehabCare claims that CHM promised to pay for Plaintiff's services. Plaintiff further claims that it relied on this promise and continued providing services. Plaintiff asserts that its reliance was reasonable, and lastly, it states that its reliance resulted in damages.

The fact that Plaintiff has overcome the low hurdle of the lax federal pleading standards obviously does not necessarily mean that it will be able to recover on this theory. CHM cites to both *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671 (7th Cir. 2005) and *Kamboj*, both of which may ultimately frustrate RehabCare's efforts to prevail. Nevertheless, the *Kamboj* court disposed of the plaintiff's claim on summary judgment. 2007 WL 178434, at *10. Similarly, the Seventh Circuit in *Dumas* was reviewing a district court's grant of summary judgment. 416 F.3d at 672. Because the procedural posture is different here, those authorities fail to counsel in favor of the result CHM seeks. Defendant's motion to dismiss Count II is denied.

D.   *Count III – Unjust Enrichment*

In Count III, Plaintiff seeks recovery based on the theory of unjust enrichment. To state a cause of action based on a theory of unjust enrichment, RehabCare must allege that CHM "has unjustly retained a benefit to [RehabCare's] detriment, and that [CHM's] retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care*

*Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Plaintiff's unjust enrichment claim is non-traditional in the same way as the plaintiff's claim in *HPI* was. Here, as there, Plaintiff "is seeking recovery of a benefit that was transferred to the defendant by a third party" as opposed to a benefit that Plaintiff itself transferred. *Id.* In this case, RehabCare seeks to recover any funds that CHM may have received from the federal government via the Medicare program.

In a situations like this, where an unjust enrichment claim is based on a benefit transferred from a third party to the defendant, Plaintiff must establish one of three propositions in order to recover. Plaintiff must establish either that:

> (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant.

*Id.* (internal citations omitted). In this case, Plaintiff relies on the third option and argues that it had a better claim than CHM to the Medicare funds. The parties engage in a minor dust-up concerning materials RehabCare attached to its response brief about the Medicare payments. I need not consider these exhibits at this stage, and in fact, I did not consider them. The allegations in the complaint put CHM on notice of the substance of RehabCare's unjust enrichment claim. Whether RebabCare will ultimately be able to prevail on this claim is a question for another day. Consequently, the motion to dismiss Count III is denied.

    E.    *Count VI – Tortious Interference with Contract*

In Count VI, RehabCare alleges tortious interference with contract (also referred to as intentional interference with contract rights. In Illinois, the elements of this tort are:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI*, 545 N.E.2d at 672 (*citing Prudential Ins. Co. v. Van Matre*, 511 N.E.2d 740 (Ill. App. Ct. 1987).

RehabCare adequately pleads all of these elements. However, this does not end the inquiry. The *HPI* court, in a factually analogous situation, noted that "where the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious." *Id.* at 677. The *HPI* court went on to state hospital management companies enjoy a privilege with regard to the entities they manage. *Id.* ("[T]he duty owed by hospital management companies to their hospitals should take precedence over their duty to the hospitals' contract creditors."). Based on the sound reasoning in *HPI*, I find that CHM—like the defendant in *HPI*—enjoys at least some privilege with regard to the Facilities.

The fact that CHN enjoys the privilege is not, in and of itself, dispositive though. The existence of the privilege means only that in addition to the above-listed elements, RehabCare must *also* allege that CHM acted in a malicious or unjustified manner. *See HPI*, 545 N.E.2d at 677 ("[W]here the conduct of a defendant in an interference with contract action was privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious.").

CHM argues, based on *HPI*, that I should dismiss Count VI because RehabCare failed to make these additional allegations that are required as a result of the privilege. However,

RehabCare's failure to sufficiently allege that CHM's conduct was unjustified may not be fatal. That is because the *HPI* court also pointed out that "[a] defendant who is protected by a privilege . . . is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *Id.* at 678. As an example, the court stated that

> a hospital management company, whose privilege is based upon the management company's role in exercising business judgment on behalf of the company's hospital, would not be justified in inducing a breach of contract *solely for the management company's gain* . . . since such conduct would not have been done to further the hospital's interests.

*Id.* So while RehabCare does not sufficiently allege malice, it may nevertheless be able to prevail if it can establish that CHM was acting solely for its own gain, as opposed to on behalf of the Facilities. It is this possibility that rescues Count VI of Plaintiff's complaint.

## V.     CONCLUSION

For the aforementioned reasons, CHM's motion to dismiss is granted as to Counts I, IV and V and denied as to Counts II, III, and VI.

ENTER:

*/s/ James B. Zagel*

James B. Zagel
United States District Judge

DATE:  November 8, 2007